```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOAH BARBER                      :    CIVIL ACTION
                                 :
        v.                       :
                                 :
STEPHEN SHEPPLEMAN, et al.       :    NO. 10-3620
```

<u>MEMORANDUM</u>

McLaughlin, J.                                    September 26, 2011

This action arises out of a confrontation between the plaintiff, Noah Barber, and two off-duty police officers, defendants Sheppleman and Carey.  The defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  The Court grants the motion in part and denies in part.

I.   <u>Factual Background</u>[1]

Barber was riding in the back of his friend's car on the way to a club.  Their car had stopped at a red light near Woodlyn Shopping Center when Sheppleman and Carey pulled up in a car next to them.  Defs.' Mot. for Summ. J., Barber Dep. at 45-46, Feb. 28, 2011 (hereinafter "Barber Dep.").  After he thought he heard something said from the other car, Barber rolled down his window.  One of the officers said they were City of Chester cops.  After a brief exchange of words, Barber's car turned and

---

[1] The Court, as it must, takes all facts in the light most favorable to the plaintiff, the nonmoving party.  <u>See</u> <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010).

pulled into the Woodlyn Shopping Center parking lot.  Id. at 49-50, 56.

The officers decided to follow Barber's vehicle into the parking lot.  Defs.' Mot. for Summ. J., Sheppleman Dep. at 111, 113 (hereinafter "Sheppleman Dep.").  Meanwhile, Carey called 911 to report that he and Sheppleman were off-duty police officers who had just been threatened to be shot.  Defs.' Mot. for Summ. J., Carey Dep. at 74.  When both cars stopped in the parking lot, the officers exited their vehicle.  Sheppleman ran up to Barber's car and grabbed at the door handle.  Carey held a badge while yelling "we're Chester cops."  Barber Dep. at 57, 62, 65.  The officers were not in uniform.  After Barber stepped out of his vehicle, Sheppleman punched him in the face.  Id. at 71.  At some point, Carey drew a gun and pointed it at Barber.  See Sheppleman Dep. at 119-20; Barber Dep. at 76, 78-79.  Carey later pointed the gun at Barber's friends.  Id. at 81.  Sheppleman then grabbed Barber's arm and took him down to the ground in a headlock.  Id. at 82-83.  One of the officers then handcuffed Barber while each one had a knee on his back to hold him down.  Only when Ridley Township police arrived did Sheppleman and Carey then back off.  Id. at 88-90.

II. <u>Analysis</u>

    A. <u>Legal Standard</u>

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once a party files a properly supported motion for summary judgment, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. <u>Anderson v. Liberty v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

A fact is "material" if it might affect the outcome of the suit under the governing law. <u>Id</u>. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>.

    B. <u>City of Chester</u>

The plaintiff conceded in its opposition to the motion for summary judgment that "the facts indicate that there is no basis for municipal liability against the City of Chester." Mem. of Law of Pl. in Opp. to Mot. for Summ. J. (hereinafter "Opp.") at 4-5. The motion for summary judgment as to the City of Chester is therefore granted as uncontested.

  C. <u>Officers Sheppleman and Carey</u>

    1. <u>Capacity</u>

  Defendants Sheppleman and Carey argue that Barber asserted federal claims against them only in their official capacities.  Defs.' Mot. for Summ. J. at 20.  Because Barber has conceded that there is no basis for municipal liability against the City of Chester, official-capacity claims against Sheppleman and Carey would also fail as a matter of law.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (noting that an official-capacity suit is to be treated as a suit against the entity).[2]

  Here, Barber fails to specify in his complaint whether defendants Sheppleman and Carey are sued in their personal or official capacities, or both.  The complaint alleges that the actions of the defendants were committed "while acting in their official capacity."  Complaint ¶ 35.  However, the Court does not read the phrase "acting in their official capacity" to mean that Barber sued the officers only in their official capacities.  Rather, in the context of the complaint, the phrase merely

---

[2] Personal-capacity suits seek to impose personal liability upon officials for actions taken under color of state law.  <u>See, e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  Officials in personal-capacity actions may assert personal immunity defenses.  By contrast, official-capacity suits represent only another way of pleading an action against the entity of which the official is an agent.  <u>Id</u>.  An official-capacity suit is, "in all respects other than name, to be treated as a suit against the entity."  <u>Id</u>. at 166.

reflects Barber's allegation that the officers were acting under color of state law - a wholly distinct legal issue.[3]

Although courts of appeal in some other jurisdictions require the complaint to identify explicitly the capacity in which the defendant is being sued, the Third Circuit has adopted a more flexible approach.  The Third Circuit instructs courts to examine the nature of the relief sought in the complaint and the parties' conduct throughout the "course of the proceedings." Melo v. Hafer, 912 F.2d 628, 635-36 n.7 (3d Cir. 1990), aff'd 502 U.S. 21 (1991); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).  Where, as here, the complaint is deficient in failing to indicate whether defendants are being sued in their individual or official capacities, courts must "interpret the pleading to ascertain what [the] plaintiff should have stated specifically." Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir. 1988).  Where ambiguity remains, the Third Circuit "resolv[es] doubts in favor of the plaintiff." See id. at 120.  This analysis goes to the question of whether a defendant who is being

---

[3] Defendants cite Hafer v. Melo for the proposition that the phrase "acting in their official capacities" is best understood as a reference to the capacity in which the actor is sued, not the capacity in which the officer inflicts the alleged injury. Reply Mem. of Def. Officers Sheppleman & Carey in Resp. to Pl.'s Ltr. Br. (hereinafter "Reply Mem.") at 6 (citing Hafer v. Melo, 502 U.S. 21, 26 (1991)).  However, Defendants quote the Supreme Court out of context.  In the quoted passage, the Court was interpreting language from its decision in Will v. Michigan Department of State Police, not language from a complaint.

sued in his personal capacity has received "adequate notice" that his personal assets are at stake.  See Melo, 912 F.2d at 636 n. 7.

Courts in this circuit examine several factors when evaluating whether the complaint should be construed as suing individual defendants in their personal capacities.  In Gregory, the Third Circuit found it clear that the defendants were sued personally because the plaintiff sought punitive damages from them, and punitive damages cannot be recovered from official-capacity defendants.  See 843 F.2d at 120.  In Melo, the Third Circuit found it significant that the defendant raised a qualified immunity defense, which indicated that he was on notice of potential personal liability.[4]  See 912 F.2d at 636; see also Sullivan v. Warminster Tp., 765 F. Supp. 2d 687, 710 (E.D. Pa. 2011); but see Ospina v. Dep't of Corrs., 749 F. Supp. 572, 576-77 (D. Del. 1990) (finding that raising qualified immunity defense at the motion to dismiss stage was not dispositive).  In addition, the Melo court noted that the complaint listed only the individual defendant's name and did not name the entity.  Other factors courts have considered include: whether the plaintiff sued the entity in addition to the individual defendant; whether the plaintiff plead Monell liability; whether plaintiff averred

---

[4] Qualified immunity is not available as a defense in official-capacity actions.  Kentucky v. Graham, 473 U.S. 159, 167 (1985).

particularized allegations of personal involvement by the individuals; and whether plaintiff named the defendant with his official title.[5]

Applying the factors to the instant case, the Court finds that they do not clearly point in one direction. Here, the caption of the complaint lists the officers' titles and lists their addresses as "c/o Chester Police Dept." The body of the complaint repeats that the officers were employees of the Chester Police Department. Complaint ¶¶ 3, 4. Barber also sued governmental entities and plead Monell liability.[6] These factors point toward official-capacity claims against Officers Sheppleman and Carey.

Yet in his complaint, Barber also requests compensatory and punitive damages against the defendants individually and jointly, a factor which the court in Gregory found significant in suggesting an individual-capacity claim. Complaint at 14; 843

---

[5] See Atwell v. Schweiker, 274 F. App'x 116, 118 (3d Cir. 2007) (considering whether plaintiff sued the entity); Craig v. Salamone, No. 98-3685, 1999 WL 213368, at *5 (E.D. Pa. Apr. 8, 1999) (considering whether plaintiff alleged Monell liability); Garden State Elec. Insp. Servs., Inc. v. Levin, 144 F. App'x 247, 252 (3d Cir. 2005) (considering whether plaintiff averred particularized allegations of personal involvement); Pena v. Div. of Child & Fam. Servs., No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010) (considering whether plaintiff named the defendants with official titles).

[6] The Court granted summary judgment as to Ridley Township, as well as a third individual defendant, Detective William Henderson, on September 7, 2011 (Docket No. 32).

F.2d at 120.[7] Furthermore, as in Melo, the defendants here raised qualified immunity as a defense, first in their answer and again in their motion for summary judgment. Barber also made particularized allegations regarding the officers' personal involvement in the assault. These factors point toward suit in the officers' individual capacities.

Because the factors point in both directions, the Court follows the Third Circuit in Gregory in resolving doubts in favor of the plaintiff. 843 F.2d at 120. The Court construes the complaint as suing Officers Sheppleman and Carey in their individual capacities and declines to grant summary judgment on the issue of capacity.[8]

### 2. Color of Law

To prevail on a § 1983 claim, a plaintiff must show that he was deprived of a constitutional right, and that the alleged deprivation was "committed by a person acting under color of state law." Harvey v. Plains Tp. Police Dep't, 635 F.3d 606,

---

[7] The defendants argue, and Barber appears to admit, that Barber dropped his punitive damages claims against Officers Sheppleman and Carey. Reply Mem. at 4; Pl.'s Answer to Mot. for Summ. J. ¶ 19. However, the court order to which the parties refer dismissed punitive damages claims pursuant to the municipal defendants' motions to dismiss - not that of the individual defendants. See Order of October 22, 2010 (Docket No. 18). The Court did not dismiss the punitive damages claims against the individual officer defendants.

[8] To the extent the complaint also made official-capacity claims, those claims fail as a matter of law.

609 (3d Cir. 2011).  Defendants move for summary judgment on the "color of law" issue.

The inquiry into the question of action under color of law is "fact-specific."  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  Barber argues, and the Court agrees, that there are genuine disputes of material fact about whether the conduct of defendants Sheppleman and Carey constituted action under color of state law.  Defendants argue that they were off-duty and not uniformed, that they took no action other than to call 911, and that they acted as private citizens.  Yet the fact that defendants were off-duty is not determinative.  See Bonenberger v. Plymouth Tp., 132 F.3d 20, 24 (3d Cir. 1997) ("[O]ff-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law.").

Furthermore, the summary judgment record, taken in the light most favorable to the plaintiff, shows that defendants Sheppleman and Carey identified themselves as police officers, followed Barber into a parking lot, displayed a badge, brandished a gun, and restrained Barber on the ground until the Ridley Township police arrived.  Therefore, the Court finds that there is a genuine issue of material fact regarding whether the officers were acting under color of state law.

3. Qualified Immunity

Finally, Sheppleman and Carey appear to contend that even if they acted under color of law, they are sheltered by qualified immunity because at the time of the incident, the law was not clearly established that their actions constituted state action.[9]  Defs.' Mot. for Summ. J. at 25-26.

Qualified immunity shields government officials performing discretionary functions from liability for damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In deciding claims for qualified immunity, courts must

---

[9] It is unclear whether Defendants raise qualified immunity regarding the "color of law" requirement under § 1983 or the state action requirement for constitutional violations.  The two concepts, though similar, are not identical.  The Supreme Court has held that every act that meets the state action requirement constitutes action under color of state law for the purposes of § 1983 liability, but not vice versa.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 935, 935 n.18 (1982).
It is also unclear whether qualified immunity analysis even applies to "color of law" or state action analysis, as opposed to the constitutional violation itself.  Defendants have not pointed to cases in this circuit that have engaged in such analysis; nor is the Court aware of any cases in this circuit.  But cf. Moore v. Carpenter,, 1046-47 (8th Cir. 2005) (finding that officers would be entitled qualified immunity because it was not clearly established that officers' conduct under the circumstances would amount to state action); Zainc v. City of Waterbury, 603 F. Supp. 2d 368, 391 (D. Conn. 2009) (finding that reasonable officers, even if off-duty, should know that warning others that they were police officers and conducting a search for a missing cell phone would make them liable for acting under color of law).  For the purposes of this decision, the Court assumes that qualified immunity applies to "color of law" or state action analysis.

decide (1) whether the facts alleged make out a violation of a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009); <u>Montanez v. Thompson</u>, 603 F.3d 243, 250 (3d Cir. 2010).

Taking all facts in the light most favorable to the plaintiff, the Court finds that at the time of the confrontation, it was clearly established under decades-long precedent that the off-duty officers' actions constituted action under color of law. The Third Circuit has held that "off-duty police officers who flash a badge or otherwise purport to exercise official authority will generally act under color of state law." <u>Bonenberger</u>, 132 F.3d at 24. Therefore, a reasonable police officer, even if off-duty, would have known that the Officers Sheppleman and Carey's actions in this case constituted actions under color of law.

An appropriate order shall issue separately.