IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOAH BARBER                              :     CIVIL ACTION
                                         :
        v.                               :
                                         :
OFFICER STEPHEN SHEPPLEMAN and :
OFFICER WILLIAM CAREY, JR.               :     NO.  10-3620

### MEMORANDUM AND ORDER

ELIZABETH T. HEY, M.J.                                    March 28, 2012

        In this civil rights suit, Noah Barber alleges that Stephen Sheppleman, a police

officer from the City of Chester Police Department, and William Carey, Jr., a police

officer from the Marcus Hook Police Department,[1] arrested him without probable cause,

maliciously prosecuted him, and subjected him to excessive force after a confrontation on

July 26, 2008.  At the time, both officers were off-duty.  Currently, Defendants

Sheppleman and Carey seek to preclude any evidence of lawsuits or settlements in other

matters and seek to preclude evidence of citizen complaints and disciplinary actions

against them.  Plaintiff has responded.

_____

        [1]During the pendency of this suit, Officer Carey became a police officer for the
City of Chester.  However, at the time of this incident, he was an off-duty officer for
Marcus Hook.

I.    **FACTS**

As alleged in the Complaint, in the early morning of July 26, 2008, Barber, Janet

Hess, and David Oddi were riding in a car driven by Jamie Ippoliti.  Doc. 1 at ¶¶ 12-13.

A vehicle pulled up next to Ms. Ippoliti's vehicle at a stop light, and the two individuals

in that car, later identified as Officers Sheppleman and Carey, began making sexually

derisive remarks to Ms. Ippolitti and Ms. Hess.  Id. at ¶¶ 14-15.  Mr. Barber responded by

asking what the two had said to Ms. Ippolitti and Ms. Hess.  Ms. Ippoliti pulled her car

into the Woodlyn Shopping Center followed by Officers Sheppleman and Carey.  Id. at ¶

17.  Officer Sheppleman attempted to open the rear passenger door where Mr. Barber was

sitting and, when unable, began kicking the door causing damage.  Id. at ¶ 18-19.

When Mr. Barber exited the car, Officer Sheppleman punched him in the face

while Officer Carey pulled a gun and pointed it at Mr. Barber.  When Mr. Barber was hit,

the others in Ms. Ippoliti's car got out, at which point Officer Carey pointed his gun at

them.  Doc. 1 at ¶¶ 21-22.  Officer Carey called 911 and stated that "a black male with a

handgun was causing a disturbance in the Woodlyn Shopping Center."  Id. at ¶ 23.

Officer Sheppleman then grabbed Mr. Barber, threw him face-down to the ground

and handcuffed him.  He then kicked Mr. Barber while he was on the ground in

handcuffs.  Doc. 1 at ¶ 24.  When officers from Ridley Township arrived, they took Mr.

Barber into custody.  He was charged with simple assault, harassment, and terroristic

threats.  Mr. Barber was incarcerated for three days until released on bail.  Id. at ¶ 26.  On June 25, 2009, all charges against Mr. Barber were dropped.  Id. at ¶ 28.

Plaintiff brought this civil rights suit on July 23, 2010.[2]  Presently before the court are defense motions to preclude introduction of evidence of lawsuits or settlements in other matters see Doc. 51, and citizens' complaints and disciplinary actions.  See Doc. 53.  Plaintiff has responded to each of these motions.  See Docs. 58 & 59.

## II.   LEGAL STANDARD

In a civil case, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."  Fed.R.Evid. 404(a).  However, Rule 404(b) provides in pertinent part that:

---

[2]In the Complaint, Mr. Barber named the two officers, Detective Henderson, Ridley Township and the City of Chester.  He claimed he was subjected to false arrest and false imprisonment, violations of his fourth and fourteenth amendment rights, that the defendants negligently failed to train and supervise the officers, that he was subjected to assault, battery, malicious prosecution, and intentional infliction of emotional distress.  See Doc. 1 at Counts I-VII.  He sought compensatory and punitive damages, attorney fees, interest and costs.  The Honorable Mary McLaughlin, to whom the case was assigned, has parsed the case down significantly in pretrial rulings.  On October 22, 2010, Judge McLaughlin dismissed Plaintiff's claims for malicious prosecution, intentional infliction of emotional distress, punitive damages, and the fourteenth amendment claim.  See Doc. 18. On September 7, 2011, Judge McLaughlin entered judgment in favor of Detective Henderson and Ridley Township, see Doc. 32, and on September 26, 2011, Judge McLaughlin entered judgment in favor of the City of Chester.  See Docs 34 & 35.  On March 8, 2012, Judge McLaughlin referred the matter to me for trial upon the consent of the parties.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b).  The Third Circuit has enunciated a four-prong test to determine the admissibility of Rule 404(b) evidence:

> (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the [district] court must charge the jury to consider the evidence only for the limited purpose for which it was admitted.

Becker v. ARCO Chem. Co., 207 F.3d 176, 189 (3d Cir. 2000) (citing J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1268 (3d Cir. 1994)).  Even when the evidence is found to be relevant and fits a proper Rule 404(b) purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged."  Becker, 207 F.3d at 191 (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir.1999)) (additional citations omitted).

Moreover, under Rule 404(b) an officer's disciplinary record is not admissible "if offered to prove a disposition to violence on the part of [the defendant] Officer," but may be admissible to show an officer's intent to use violence."  West v. City of Philadelphia, No. 86-7487, 1988 WL 21955, at *1 (E.D. Pa. Feb. 29, 1988); see also Whichard v.

Baylor, No. 01-148, 2004 WL 1490360, at *1-2 (E.D. Pa. Jul. 1, 2004) (excluding evidence of prior bad acts by prison officials for the purpose of proving that officials intended to cause harm in the case because "[t]he risk is too high that the jury, regardless of how well instructed, would conclude that, because these officers had used improper force on a prisoner before, they were more likely to have done so here"); Thompson v. Mancuso, No. 08-3638, 2009 WL 2616713, at *3-4 (E.D. Pa. Aug. 25, 2009) (rejecting modus operandi theory for admission of prior police misconduct).

II.     **DISCUSSION**

        In the present case, Plaintiff seeks to introduce evidence of citizen complaints and disciplinary actions against Defendants.  The citizen complaints include allegations of verbal harassment and one of false arrest for which the complainant pled guilty to disorderly conduct for assaulting another officer.  See Doc. 53 at 4-5.  Officer Carey was disciplined for making repeated calls to 911 to get a car towed and the discipline was dismissed as unfounded.  Id. at 4.  Officer Sheppleman was disciplined for failing to appear in a courtroom, resulting in the dismissal of charges.  That incident is currently in grievance and arbitration.  Id. at 6.  Plaintiff argues that this evidence is admissible to show Defendants' motive in arresting him – to 'cover' their own actions in committing an improper assault and battery against him."  Doc. 58 at 4.  The problem with the Plaintiff's argument is that none of the incidents referred to allege any type of cover up.

Plaintiff also argues that this evidence is relevant and probative regarding the issue of the Officers' "pattern and practice of related behavior."  Doc. 58 at 7.  Plaintiff's argument amounts to a clear violation of Federal Rule of Evidence 404(a).  He admits that the reason he seeks admission of the evidence is to show action in conformity with the prior bad acts.  Such evidence would be relevant to a municipal liability claim alleging a failure to train or a pattern or practice of the municipality under Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978).  See Beck v. City of Pittsburgh, 89 F.3d 966, 969 (3d cir. 1996) (reports of civilian complaints of excessive force admissible against the City to prove knowledge of the officer's pattern of violent behavior and a failure to act accordingly).  However, the municipalities have been dismissed from the action. Therefore, admission of the evidence for the purpose stated by Plaintiff would run afoul of Rule 404(a).

Plaintiff also seeks to introduce evidence of an unrelated excessive force lawsuit, involving a June 22, 2009 incident, in which Officer Carey was named as a defendant. The case was settled through an offer of judgment.  Defendants seek to preclude this evidence under the Federal Rules of Evidence.[3]  Plaintiff responds that this evidence is "relevant and probative regarding the issue of Officer Carey's 'pattern and practice of

---

[3]To the extent Defendants rely on Rule 408 to preclude evidence of the settlement of Officer Carey's other lawsuit, their reliance is misplaced.  Rule 408 prohibits the use of compromises and offers of compromise with respect to the claim at issue.  See Quagliarello v. Dewees, 802 F.Supp.2d 620, 628 (E.D. Pa. 2011).  Here, defendants seek to preclude admission of the compromise of an unrelated claim.

related behavior." Doc. 59 at 7. Again, it seems Plaintiff fails to acknowledge that the municipal liability claim has been dismissed. Therefore, there is no justification for the admission of this evidence to show a pattern or practice.

Plaintiff's reliance on United States v. Eufrasio, 935 F.3d 553 (3d Cir. 1991), is flawed. Eufrasio was a criminal case in which the court permitted uncharged crimes to be used as predicates to establish a pattern of racketeering to sustain a RICO charge. The court explained, "the uncharged . . . crimes evidence admitted in this case went to prove important elements of the RICO counts charged against appellants." Id. at 572.

Similarly, in Toledo Mack Sales & Serv. v. Mack Trucks, Inc., 386 Fed. Appx. 214 (3d Cir. 2010), the court permitted evidence of a crime by an employee of a distributorship to be admitted to show alternative reasons for a loss in sales to defend a Sherman Act case. In the suit, Toledo Mack alleged that Mack Trucks illegally conspired to restrict Toledo Mack's competition with other Mack Truck dealers in violation of the Sherman Act. Prior to trial, Toledo Mack filed a motion in limine to exclude evidence that its drop in sales was due to the fact that it was involved in several lawsuits, that its top salesman was convicted of a crime, and that Toledo Mack was terminated as a Mack Truck dealer for misappropriating trade secrets. The trial court denied the motion without discussion of the relevant evidentiary rules. The Third Circuit found no abuse of discretion explaining that the proffered evidence had a tendency to demonstrate that it was probable that Toledo Mack's loss of sales was caused by poor management rather

than Mack Truck's alleged violation of the Sherman Act.  <u>Id.</u> at 218.  Thus, evidence of a

crime committed by the salesman was part of the defense to the claim.  No such link

exists here.

An appropriate order follows.